UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE NUNN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation; NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation; and DOES 1 through 100, inclusive,<br><br>　　　　　　Defendants. | Case No.: 3:21-cv-01473-BEN-MDD<br><br>**ORDER DENYING MOTION FOR LEAVE TO INTERVENE**<br><br>**[ECF No. 10]** |

**I.     INTRODUCTION**

Plaintiff Suzanne Nunn brings this action for alleged wrongful denial of insurance benefits against Defendants United States Liability Insurance Company ("USLI") and Nationwide Mutual Insurance Company ("Nationwide") (collectively, "Defendants"). ECF No. 1.

Before the Court is a Motion for Leave to Intervene as plaintiffs filed by Bishop Kevin William Vann ("Bishop Vann") and Elizabeth Jenson ("Jenson") (collectively, "Proposed Intervenors"). ECF No. 10. The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules

of Civil Procedure.  ECF No. 16.  After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** the Motion.

## II. BACKGROUND

Plaintiff alleges Defendants wrongfully and in bad faith denied her insurance claims for potential liability relating to a libel lawsuit filed by Bishop Vann and Jenson against Plaintiff in Orange County Superior Court.

### A. Statement of Facts[1]

Plaintiff contends that she was insured with USLI "as an employee of the named insured Endowment Horizons, Inc." ECF No. 1 ("Compl.") at 3,[2] ¶ 6.  The USLI coverage was "under an Errors and Omissions policy of insurance . . . effective from February 19, 2020, through February 19, 2021 (the "USLI Policy")."  *Id.*  During the relevant period, Plaintiff alleges she was also insured under two policies issued by Nationwide, including a Primary Homeowner Policy (the "Primary Policy") and an Umbrella or Excess Policy ("Umbrella Policy").[3]  *Id.* at 3, ¶ 7(a)–(b).  The Homeowner Policy was in effect from April 21, 2020, through April 21, 2021.  *Id.* at 3, ¶ 7(a).  The Umbrella Policy was in effect from December 11, 2019, through December 11, 2020.  *Id.* at 3, ¶ 7(b).

On October 9, 2020, Bishop Vann and Jenson filed a complaint against Plaintiff in Orange County Superior Court for libel and intentional infliction of emotional distress (the "Underlying Litigation").[4]  *Id.* at 3, ¶ 8.  Once served with the Underlying Litigation, Plaintiff "timely tendered defense and indemnification thereof to USLI on or before November 12, 2020."  *Id.* at 4, ¶ 9.  Plaintiff also "timely tendered defense and indemnification to Nationwide under both the" Primary Policy and Umbrella Policy.  *Id.*

---

[1] The majority of the facts set forth are taken from Plaintiff's operative Complaint and at this stage in the proceedings, are assumed as true.
[2] Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.
[3] All policies issued by both USLI and Nationwide will be referred to collectively as the "Policies."
[4] *See Most Reverend Kevin William Vann, et al. v. Suzanne Nunn*, No. 30-2020-01164434-CU-DF-CJC (Orange Cty. Superior Court).

at 4, ¶ 11. Plaintiff alleges that both USLI and Nationwide "wrongfully, and in bad faith, refused to provide a defense or to indemnify [her] as required by said polic[ies] for the claims alleged against [her] in the Underlying [Litigation]." *Id.* at 4, ¶ 10, 12.

USLI's denial of coverage is dated November 16, 2020, and Nationwide's denial is dated December 15, 2020. *Id.* at 4, ¶ 10; 5, ¶12. Plaintiff alleges that as a result of both USLI's and Nationwide's "conduct, [Plaintiff] suffered, and will continue to suffer significant damages." *Id.* at 4, ¶ 10. On November 20, 2020, Plaintiff responded to USLI's denial of coverage, demanding it defend and indemnify her under the terms of the USLI Policy but on November 23, 2020, USLI again, wrongfully and in bad faith, "refused to provide a defense or indemnify [Plaintiff] as required . . . ." *Id.* at 4, ¶ 10.

Plaintiff alleges that USLI denied coverage because the actions alleged in the Underlying Litigation "were personal in nature and not done in the course of [Plaintiff's] business pursuits." *Id.* at 5, ¶ 12. Plaintiff alleges that Nationwide denied coverage because the actions alleged in the Underlying Litigation were business in nature and not personal." *Id.* at 5, ¶ 12. Plaintiff argues that "[b]oth contentions cannot be correct." *Id.*

### B.  Underlying Litigation[5]

Bishop "Vann [has] served as the Roman Catholic Bishop for the Diocese of Orange" since 2012, and "Ms. Jenson has served as the Chief Financial Officer" since 2017. Ex. D to Compl. at 4, ¶ 8. To fulfill sacred covenants intended to serve people in need, "the Diocese established the Orange Catholic Foundation" (the "Foundation"), which is "a professional fundraising organization specializing in philanthropy . . . ." *Id.* at 5, ¶ 11; *see also id.* at 3–4, ¶¶ 4–10. In April 2019, the executive director of the Foundation passed away. *Id.* at 5, ¶¶ 15–16. Plaintiff began working as the interim executive director. *Id.* Plaintiff allegedly "had personal and business connections to a prominent Foundation Board member" and had previously consulted "for the Foundation

---

[5]  The facts involving the Underlying Litigation are taken from the complaint filed by Bishop Vann and Jenson in Orange County Superior Court and attached to Plaintiff's Complaint in this matter. *See* Ex. D to Compl.

on how to communicate with donors about including gifts and endowments in their wills and trusts." *Id.* at 5, ¶ 16.  However, Plaintiff had never "been a managing executive of a Foundation[,] led operations, development, or strategy for a Foundation[,] or run a fundraising campaign of the type that the Foundation was formed to operate." *Id.* at 5–6, ¶ 16.  Plaintiff allegedly "lacked the skills to be a Permanent Executive Director, and for that reason," the position was temporary.  *Id.* at 6, ¶ 16.

One of Plaintiff's responsibilities was to assist in searching for a qualified permanent executive director.  *Id.* at 6, ¶ 17.  The state court allegations maintain that Plaintiff was not qualified for the position, which caused several issues for the Foundation.  *Id.* at 6–8, ¶¶ 20–23, 25.  Bishop Vann wrote a letter to the Foundation's Board detailing certain failures by Plaintiff and instructing that the Board secure a qualified permanent executive director in sixty to ninety days.  *Id.* at 7–8, ¶¶ 24–25.  On June 18, 2020, after the Board failed to meet this deadline, failed make any progress on developing a strategic plan, and cancelled a critical meeting to discuss these issues, Bishop Vann removed and replaced the Board.  *Id.* at 8–9, ¶¶ 26–28.  Plaintiff's contract was terminated the next day and a new interim executive director was installed.  *Id.* at 9, ¶ 29.  The new Board hired a qualified executive director three months later.  *Id.*

The allegations state that although this should have been the end of the story, Plaintiff "had other plans in mind."  *Id.* at 9, ¶ 33.  Plaintiff subsequently "sent a broadcast email [the "Email"] wherein she fabricated a false narrative that her contract was terminated because she objected to [Bishop Vann's] and Ms. Jensen's demand that Foundation funds be used for illicit purposes, namely to pay for church sex abuse claims and other church debts."  *Id.* at 9–10, ¶ 33.  The Email was sent to "47 leaders from Catholic foundations and dioceses around the country."  *Id.* at 10, ¶ 35.  The allegations claim that Plaintiff had two goals in sending the Email: (1) to retaliate against Bishop Vann and Jenson, and (2) to protect her reputation and future income with other Catholic foundations.  *Id.* at 9, ¶ 33.  The allegations also state that after June 20, 2020, Plaintiff "was no longer consulting for the Foundation or serving as its Interim Executive

Director," and "[a]fter this date, there was no legitimate reason for her to involve herself in any Foundation business, and she certainly was not authorized to speak for or act on behalf of the Foundation." *Id.* at 10, ¶ 35. Plaintiff allegedly wanted to "elevate her reputation among other foundations and diocese to generate more business for herself, and make [Bishop Vann] and Ms. Jenson look bad." *Id.* at 10, ¶ 35. The allegations go on to state claims for libel and intentional infliction of emotional distress resulting from Plaintiff's Email.

### C. Procedural History

On August 18, 2021, Plaintiff filed the instant Complaint naming both USLI and Nationwide, alleging: (1) breach of the implied covenant of good faith and fair dealing; (2) breach of contract; (3) declaratory relief; and (4) unfair business practices in violation of California Business & Professions Code sections 17200 *et seq.* Compl. at 1. USLI answered the Complaint, but Nationwide filed a Motion to Dismiss. *See* ECF Nos. 4, 5. The Court granted-in-part Nationwide's Motion to Dismiss, and Nationwide subsequently answered the Complaint. *See* ECF Nos. 18, 19. In the meantime, Bishop Vann and Jenson filed the instant Motion for Leave to Intervene. ECF No. 10 ("Motion"). USLI filed an Opposition to the Motion, ECF No. 13 ("Oppo."), to which Bishop Vann and Jenson replied. ECF No. 15 ("Reply"). Nationwide also filed a Response to the Motion for Leave to Intervene with certain stipulations should the Motion be granted. ECF No. 14. Plaintiff has not opposed the Motion.

## III. LEGAL STANDARD

"[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002) (quoting in *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)); *see also* Fed. R. Civ. P. 24(b)(1) ("[T]he court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.").

Rule 24(b)(3) further requires that a court evaluate "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Finally, "the court must 'take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections.'" *Lockhart v. Travelers Com. Ins. Co.*, No. 1:21-cv-00268-DAD-SKO, 2022 WL 541789, at *3 (E.D. Cal. Feb. 23, 2022) (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001)).

## IV. DISCUSSION

Bishop Vann and Jenson argue that all elements for permissive intervention are met in this case and attach to their Motion a proposed Complaint-In-Intervention for Declaratory Relief. Motion at 9–13; Ex. 1 to Motion.

### A. Jurisdiction

Proposed Intervenors argue that their intervention would not disturb diversity jurisdiction in this case, because they "are citizens of California, while Nationwide and USLI are citizens of Ohio and Pennsylvania, respectively." Motion at 10. USLI does not dispute jurisdiction. Because diversity jurisdiction exists—and is pleaded in the proposed Complaint-In-Intervention—the jurisdictional element is satisfied.

### B. Timeliness

Proposed Intervenors argue the Motion is timely because it was filed while Nationwide's Motion to Dismiss was still pending before this Court, no discovery has been conducted, and there is no discovery schedule at this time. Motion at 10. USLI does not appear to challenge the timeliness of the Motion and because there is still no discovery schedule in this matter,[6] the Motion is timely. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (citing *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981) ("Timeliness is a flexible concept; its determination is left to the district court's

---

[6] The ENE/CMC with the Magistrate Judge will occur after the parties participate in private mediation on December 1, 2022. ECF No. 24. A Status Conference before the Magistrate Judge is currently set for December 12, 2022. *Id.*

discretion.").

### C. Common Questions of Law or Fact

Proposed Intervenors argue that their "claim to the benefits of the Policies, via [Plaintiff's] primary rights to defense and indemnity, shares the same nucleus of laws and facts . . . [that are] at issue in [Plaintiff's] action here." Motion at 9. Proposed Intervenors argue that as such, "they have a substantial financial interest in the outcome of this action." *Id.* Proposed Intervenors further argue that "the insurance coverage dispute depends on the allegations of the underlying lawsuit . . . , as opposed to facts independent from the underlying lawsuit . . . ." *Id.* at 10. Proposed Intervenors also contend they "have extensive and potentially exclusive knowledge regarding the facts surrounding the" underlying litigation, including Plaintiff's "professional affiliation with the Foundation at the time she sent the July 7 Email." *Id.*

USLI argues that Proposed Intervenors are simply seeking to protect their interest in any judgment they may obtain in the Underlying Action, but that this financial interest "does not satisfy the common questions of law or fact requirement." Oppo. at 5. USLI explains that Proposed Intervenors' rights as potential "judgment creditors in the Underlying Action are statutorily preserved under Cal. Ins. Code § 11580." *Id.* at 8. USLI further argues that the issues surrounding the coverage dispute are not applicable in the Underlying Litigation. *Id.* at 6–7. Finally, USLI contends that "Proposed Intervenors' interests are adequality represented by [Plaintiff], who is no doubt motivated to prosecute her claim for coverage under the USLI Policy lest she be personally exposed for a judgment in the Underlying Action." *Id.* at 8.

Proposed Intervenors also argue that the facts of the inquiry concerning whether Plaintiff was acting in a business capacity when she sent the Email are "squarely at issue in the Underlying Action because they bear on [Plaintiff's] liability and Proposed Intervenors' damages." Reply at 2. Proposed Intervenors reiterate that their resources and financial incentive will result in a meaningful contribution to the resolution of this case. *Id.* The Court disagrees. Although the outcome of the Policies' coverage may potentially

-7-

impact whether Proposed Intervenors can collect a judgment or settlement (should they succeed in establishing libel and resulting intentional infliction of emotional distress), whether Plaintiff was acting in a personal or professional capacity when she sent the Email is not at issue in the Underlying Litigation. The elements required to prove libel do not involve legal questions related to interpreting contractual language in an insurance policy. Nor do the facts being applied to determine coverage—*i.e.*, Plaintiff's personal or professional motive—relate to the elements of Proposed Intervenors' tort claims.

There is undeniable factual overlap respecting the background of both this case and the Underlying Litigation. However, the factual *disputes* and legal analyses are different. For example, the Orange County court will need to analyze whether the statements were in fact false concerning Bishop Vann and Jenson. Here, the primary dispute is over insurance coverage and Plaintiff's motive in sending the Email—whether it was sent in her personal or professional capacity. As discussed in this Court's prior order, the Nationwide-issued Policies cover defamation but two exclusionary clauses bar that coverage if the conduct arises from business or professional services.[7] This Court is required to interpret those exclusionary clauses as a matter of law, while applying the facts surrounding Plaintiff's motive to determine whether Nationwide has a duty to defend Plaintiff. If the exclusionary clauses do not apply, there is a duty to defend, whether or not Plaintiff is found liable in the Underlying Litigation. *See Colony Ins. Co. v. Advanced Particle Therapy LLC*, No. 17-cv-01427-BAS-AGS, 2017 WL 5483360, at *3 (S.D. Cal. Nov. 15, 2017) ("In this case, Yaquinto claims that APT was negligent and breached its duty of loyalty to the Dallas Proton Entities. This claim shares no questions of law or fact with Colony's claim in this case that the exclusions in the Policy prohibit coverage."). Proposed Intervenors cite *Markel Am. Ins. Co. v. Clearview Horizon, Inc.*, where an issue in that underlying litigation

---

[7] There is a similar but reversed analysis respecting USLI's duty to defend. Plaintiff alleges that USLI's coverage denial was based on USLI's contention that Plaintiff's conduct was personal in nature and not performed in the course of Plaintiff's business pursuits. ECF No. 1 at 5, ¶ 13.

-8-

concerned the alleged negligent acts and whether they constituted medical services. No. CV 21-73-M-DLC, 2021 WL 5330405, at *2 (D. Mont. Nov. 16, 2021). The parties sought to intervene in the insurance coverage litigation, because the policy exclusion at issue was for healthcare professional liability. *Id.* The *Clearwater* court allowed intervention given closely tied inquiries of whether the "allegedly negligent acts or omissions constituted medical services" and thus fell within the healthcare professional liability exclusion. *Id.* As stated above, that is not the case here.

Equally important is the fact that Proposed Intervenors are not signatories or named beneficiaries to the Policies in question. While they could potentially receive policy benefits, they did not contract for insurance coverage with USLI or Nationwide—Plaintiff did. The duty to defend is therefore not owed to Proposed Intervenors. The Court agrees with USLI that a speculative financial interest in the proceeds of the Policies is not sufficient to allow intervention in this litigation. The case involves potential liability of USLI and Nationwide to Plaintiff, while the Underlying Litigation involves potential liability of Plaintiff to Proposed Intervenors. Despite factual overlap in the background of these cases, the factual and legal issues to be decided in each are not so similar that they satisfy the element of common questions of law or fact.

### D.    **Prejudice or Undue Delay**

Proposed Intervenors contend that there will be no undue delay or prejudice, and that "no original party expressed affirmative opposition to the intervention . . . ." Motion at 10–11. Proposed Intervenors claim that Plaintiff and her counsel invited the intervention, because "they recognize that the[ir] resources and participation will promote the efficient and correct determination of insurance coverage." *Id.* at 11.

USLI argues that "the requested intervention would unduly *burden* judicial and party resources and delay resolution of this action." Oppo. at 8. USLI explains that Proposed Intervenors seek to engage in discovery with USLI and Nationwide and participate in dispositive motions concerning coverage. *Id.* USLI contends that this would only decelerate the instant proceedings. *Id.* USLI maintains that the request "to intervene

should be denied so that Proposed Intervenors can direct their attention to the litigation of their actual claims against Plaintiff based on their own merits and as currently pled. *Id.* at 9. USLI also argues that intervention would not progress the Underlying Litigation towards resolution, because there are multiple claims in suit. *Id.* In addition to Proposed Intervenors' claims of libel and intentional infliction of emotional distress, Plaintiff filed crossclaims for "breach of contract and interference with contractual relations/prospective economic advantage." *Id.* USLI contends that the Underlying Litigation therefore includes additional parties, claims, and potentially, other insurance carriers not implicated here. *Id.*

Proposed Intervenors are essentially arguing that Plaintiff lacks the ability to prosecute her coverage action. However, Plaintiff's vigorous and primarily successful Opposition to Nationwide's previous Motion to Dismiss implies otherwise. The only claim dismissed was the alleged violation of California's Business & Professions Code—dismissal was based on Plaintiff's failure to plead that she lacked an adequate remedy at law. ECF No. 18 at 26–28. Given that Plaintiff alleges monetary damages through a breach of contract claim, she had an adequate remedy at law and was unlikely to succeed in pleading this claim. Plaintiff was otherwise successful in opposing Nationwide's attempt to dismiss the Complaint. In addition, the Court agrees with USLI that Proposed Intervenors' involvement in discovery and dispositive motions is unnecessary and would likely delay proceedings in this case. Proposed Intervenors argue that they only intend to provide supplemental briefs "in support of significant motions and issue targeted, non-duplicative discovery as necessary." Reply at 7. However, Proposed Intervenors do not explain how this prevents undue delay. Supplemental briefs will add time to the Court's calendar, while additional discovery (from parties not privy to the contracts at issue) will increase USLI and Nationwide's defense efforts. Adding parties that are not signatories to the insurance contracts is not warranted in this case where Plaintiff and her counsel are clearly capable of prosecuting the alleged claims.

Finally, although Plaintiff does not oppose intervention, USLI does. The Court is

not required to allow for intervention simply because Plaintiff and Nationwide[8] do not oppose. *See Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (affirming the district court's denial of permissive intervention, where the insured did not appear to oppose intervention; "[t]he issue of insurance coverage [was] unrelated to the issue of fault in the [underlying] wrongful death action;" and intervention would not help resolve the insurance coverage dispute). USLI need not defend its contractual agreement against parties not privy to that agreement.

Even if all threshold requirements for permissive intervention were met, the Court would likely still find intervention unwarranted, given the potential for delay, prejudice to USLI and Nationwide, and Proposed Intervenors' purely economic interest. *See Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (quoting *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977)) (explaining how even "[w]here a putative intervenor has met the[] [necessary] requirements, the court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'"); *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, No. SA CV 131267-JLS-JEMx, 2014 WL 12586379, at *5 (C.D. Cal. Mar. 10, 2014) ("Even assuming that Pisinski had satisfied the elements for permissive intervention . . . , this Court would still exercise its discretion to deny her request to permissively intervene. As discussed above, Pisinski has identified, at best, only a tenuous connection to this action, and allowing her to intervene would serve only to unnecessarily delay and complicate these proceedings."). Accordingly, the Court declines to exercise its discretion to permit intervention.

---

[8] Nationwide does not oppose the Motion for Leave to Intervene but does set forth certain requests if the Court were to grant the Motion. ECF No. 14. Because the Court is not granting Proposed Intervenors' Motion, there is no need to detail Nationwide's stipulations.

## V. **CONCLUSION**

For the above reasons, the Court **DENIES** Proposed Intervenors' Motion for Leave to Intervene.

**IT IS SO ORDERED**.

DATED: November 25, 2022

_____
**HON. ROGER T. BENITEZ**
United States District Judge